Michael Schad Attorney at Law
2100 Garden Road Suite C-315
Monterey, CA. 93940
(831)333-0313 FAX (831)655-1106
Bar #109911

Attorney for Plaintiff: Jerry Maurer

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA

IN RE: Grant Michael Peuse ) Chapter 7 Bankruptcy
Shanna Louise Peuse )
Debtors ) Case No: 09-53064 SLJ
)
) Judge: Hon. Stephen L. Johnson
)
) Adversary No.:

Jerry Maurer
Plaintiff
vs.
Grant Michael Peuse
Shanna Louise Peuse
Defendants

**COMPLAINT TO DETERMINE DISCHARGEABILTY OF DEBT**
11 U.S.C. 523 (a)(2)(A)
11 U.S.C. 523 (a)(4)

[Summary of pleading] – 1

Plaintiff, Jerry Maurer ("Plaintiff") hereby alleges against Defendants Grant Michael Peuse and Shanna Louise Peuse ("Debtors") as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. 1334. Venue is properly before this Court pursuant to 28 U.S.C. 1409 by virtue of the Chapter 7 case, as converted from Chapter 13, before the United States Bankruptcy Court for the Northern District of California, San Jose Division.

2. This Complaint initiates an Adversary Proceeding as contemplated under Rules 7001 (6) of the Federal Rules of Bankruptcy Procedure. The controversy is a core proceeding as defined in 28 U.S.C. 157(b)(2)(1).

3. Plaintiff is an individual who has done business with Debtor Grant Peuse, doing business as GMP Speed and Machine, in Santa Cruz CA. in the Northern District of California. Plaintiff lives in Santa Cruz CA. in the Northern District of California.

4. Plaintiff is informed and believes that the Debtors live in Scotts Valley CA. within the Northern District of California.

## GENERAL ALLEGATIONS

5. Debtors filed a Chapter 13 Bankruptcy Petition on April 24, 2009. At that time, Plaintiff was not listed as a Creditor and was not a party to the case.

6. Debtors converted the case to Chapter 7 Bankruptcy on March 13, 2012.

7. Debtors filed an Amended Schedule of Post-Petition Debts on March 27, 2012, which included 18 additional Creditors, including Plaintiff.

8. At issue is a 1970 Dodge Challenger R/T Convertible. The vehicle was discovered in Tennessee and brought to California as a salvage vehicle, without title. This is a very valuable vehicle. Restored, and even without matching numbers and factory equipment, the vehicle is

[Summary of pleading] - 2

worth $100,000 to $200,000. It was initially represented to be a rare vehicle, 1 of 50 produced, that had an auction history of $250,000 to $1.8 Million.

9. Plaintiff and Debtor had worked together on a previous project, Plaintiff's 1969 Chevrolet Truck. In December 2007, Debtor offered to sell the Challenger to Plaintiff as a restoration project. The sale was consummated on December 27, 2007 for $45,000, with a bill of sale. (Exhibit 1)

10. The bill of sale referenced the original restoration estimate, #1769, dated December 18, 2007 (Exhibit 2) for which the Plaintiff paid $21,000 on December 27, 2007. From December 2007 to December 2008, Plaintiff paid an additional $28,600 for parts and labor.

11. The restoration did not proceed quickly. It also became clear that the vehicle was not what it was originally purported to be lowering the final restored value from the original estimates. In 2011, The Plaintiff scheduled progress meetings with the Debtor, making it clear that he wanted to sell the car at the R&M Auction, in Monterey, in the fall of 2011.

12. On July 14, 2011, when it became clear that the project may not be completed in time for the auction, the Debtor and Plaintiff entered into an incentive contract, providing that if the restoration was not complete and the car ready for sale by September 1, 2011 that Debtor would pay damages of $25,000 to Plaintiff. (Exhibit 3) The vehicle was not completed and the damage amount was paid by Debtor to Plaintiff.

13. In December 2011 Plaintiff lost all confidence in the Debtor to complete the project. Both parties hired attorneys to draft and complete an agreement selling the vehicle from Plaintiff back to the Debtor for $150,000, in a six payment installment agreement titled Settlement Agreement and Release of all Claims. (Exhibit 4). The agreement was fully conformed on December 13, 2011. The Debtor, who was still in an active Chapter 13, did not seek permission from the Chapter 13 Trustee to enter into the installment agreement. The Debtor failed to perform and made none of the scheduled payments. The important aspect of this agreement to note is that it clearly states that Plaintiff retains ownership of the vehicle until he is paid in full or until the

Debtor is able to sell the vehicle, at which point he must request, in writing, that the ownership be transferred to the Debtor before being transferred to any third party. The agreement was not paid and no request to transfer the property was received by the Plaintiff.

14. In about February 2012 the Debtor closed his shop and the vehicle disappeared. Plaintiff has performed due diligence to try and locate the vehicle and to determine the reason for Plaintiffs addition to the Creditor list. Plaintiff has been informed and believes that he was added to the Creditor list because there is the potential that he may sue the Debtor. All inquiries as to the location of the vehicle and its return to the Plaintiff have been referred to Paul Meltzer, a criminal attorney, who has been mostly unresponsive, but did state, in an e-mail, that he felt the vehicle issues were resolved by the civil agreement of December 2011 (Exhibit 4). Under oath, at a 341 Meeting on May 25, 2012, plead his Fifth Amendment right against self-incrimination to nearly all questions, including the liability that he hoped to have discharged as to Plaintiff. He did answer that he knew about the 1970 Dodge Challenger in question and that he never owned the vehicle. The Chapter 7 Trustee has been informed that the vehicle belongs to another Creditor, Richard Fontana of Santa Cruz CA. and is in his possession.

## COUNT I
## DETERMINATION OF DISCHARGEABILITY OF DEBT
## 11U.S.C. 523 (a)(2)(A)

15. Plaintiff restates and realleges, as fully set forth herein, the allegations of paragraphs 1 through 14 above.

16. Plaintiff is seeking an exception to the discharge of any debt or recovery owed to Plaintiff due to false pretenses, a false representation, or actual fraud pursuant to 11 U.S.C. 523 (a)(2)(A).

17. The Debtor has testified, under oath, that he never owned the 1970 Dodge Challenger in question. However Plaintiff purchased the vehicle in 2007, from the Debtor, and was given a bill of sale. Plaintiff and Debtor entered into further agreement to restore the vehicle for which Plaintiff paid. In July 2011, the Plaintiff and the Debtor entered into an incentive contract, which

recognized Plaintiff's ownership right in the vehicle and for which the Debtor paid a $25,000 penalty for non-performance on or about September 2011. In December 2011, the Plaintiff and Debtor entered into a civil contract that recognized the Plaintiff's ownership right in the vehicle. The Plaintiff has now been informed that the vehicle is not his and belongs to another party.

18. The Plaintiff has paid the Debtor at least $94,600.00 for the vehicle, parts, and restoration services and has neither the vehicle and parts or the financial value of his investment.

19. Therefore, Plaintiff asserts that any debt or claim of the Plaintiff should be found non-dischargeable in Bankruptcy pursuant to 11 U.S.C. 523(a)(2)(A).

## COUNT II
## DETERMINATION OF DISCHARGEABILITY OF DEBT
## 11U.S.C. 523 (a)(4)

20. Plaintiff restates and realleges, as fully set forth herein, the allegations of paragraphs 1 through 14 above.

21. Plaintiff is seeking an exception to the discharge of any debt of recovery owed to Plaintiff due to fraud, embezzlement, or larceny pursuant to 11 U.S.C. 523 (a)(4).

22. The Debtor has testified, under oath, that he never owned the 1970 Dodge Challenger in question. However, Plaintiff purchased the vehicle in 2007, from the Debtor, and was given a bill of sale. Plaintiff and Debtor entered into further agreement to restore the vehicle for which Plaintiff paid. In July 2011, the Plaintiff and Debtor entered into an incentive contract, which recognized Plaintiff's ownership right in the vehicle and for which the Debtor paid a $25,000 penalty for non-performance on or about September 2011. In December 2011, the Plaintiff and Debtor entered into a civil contract that recognized the Plaintiff's ownership right in the vehicle. The Plaintiff has now been informed that the vehicle is not his and belongs to another party.

23. The Plaintiff has paid the Debtor at least $94,600.00 for the vehicle, parts, and restoration services and has neither the vehicle and parts or the financial value of his investment.

Case: 12-05114   Doc# 1   Filed: 06/08/12   Entered: 06/08/12 13:05:16   Page 5 of 6

24. Therefore, Plaintiff asserts that any debt or claim of the Plaintiff should be found non-dischargeable in Bankruptcy pursuant to 11 U.S.C 523 (a)(4).

WHEREFORE, Plaintiff prays:

1. That the debts or claims owed to Plaintiff be determined non-dischargeable pursuant to 11 U.S.C. 523 (a)(2)(C) and or 11 U.S.C. 523 (a)(4).
2. For judgment in favor of the Plaintiff on all claims for relief.
3. For costs and attorney fees incurred in prosecuting this action.
4. For punitive and or exemplary damages in an amount to be proved at trial.
5. For such other and further relief as the Court may deem proper and just.

Executed at Monterey, CA. on June 8, 2012

                                            Respectfully Submitted,

                                                /s/ Michael Schad

                                        Michael Schad, Attorney for Plaintiff

Case: 12-05114    Doc# 1    Filed: 06/08/12    Entered: 06/08/12 13:05:16    Page 6 of 6